**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JEANNE VAN DUZER LANG, et al.,

    Plaintiffs,

v.

PATIENTS OUT OF TIME, et al.,

    Defendants.

Civil Action No. 20-615 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Patients Out of Time ("POT"), Mary Lynn Mathre ("Mathre"), Michael Aldrich, Denis Petro, Elvy Musikka, Irvin Rosenfeld, Melanie Dreher, and Dustin Sulak's (collectively, "Defendants") Motion to Dismiss or, in the Alternative, to Transfer Venue. (ECF No. 12.) Plaintiffs Jeanne Van Duzer Lang ("Lang") and Laramie Van Duzer Silber ("Silber") (collectively, "Plaintiffs") opposed (ECF No. 16), and Defendants replied (ECF No. 19). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants in part and denies in part Defendants' Motion and transfers this matter to the United States District Court for the Western District of Virginia.

## I. BACKGROUND

Defendant POT is a 501(c)(3) non-profit organization incorporated in Virginia. (Compl. ¶ 3, Ex. A to Notice of Removal, ECF No. 1 at *12–38.)[1] Defendant Mathre is the president and founding director of POT. (*Id.* ¶ 6.) Defendants Aldrich, Petro, Rosenfeld, Dreher, Sulak, and Musikka are members of POT's board of directors (the "Board"). (*Id.* ¶¶ 6–12.) POT's mission is to educate health care professionals and the public about the scientific benefits of medical cannabis. (*Id.* ¶ 4.) In 2000, POT began to hold biannual conferences. (*Id.* ¶ 17.) In 2012, POT declared bankruptcy. (*Id.* ¶ 18.)

Sometime in 2013, Mathre and Plaintiffs, former POT conference attendees and volunteers, decided to revitalize POT. (*Id.* ¶¶ 17, 19.) Silber submitted and presented a formal proposal for a 2014 conference to Mathre and the Board of Directors. (*Id.* ¶ 19.) After a successful conference in 2014 in Portland, Oregon, Plaintiffs and Mathre met with an accountant and an attorney to discuss the restructuring of POT to be compliant with federal tax law and to fulfill its mission more effectively. (*Id.* ¶ 20.) From these discussions, it was agreed that POT would not produce a 2015 conference to prioritize its restructuring. (*Id.* ¶ 21.) In the late summer of 2014, however, Mathre insisted POT produce a 2015 conference and signed a contract for a venue without Board approval. (*Id.* ¶ 22.) Unhappy with Mathre's disregard for process and procedure, Plaintiffs "resigned." (*Id.* ¶ 23.)

In December 2014, Plaintiffs reached an agreement with Mathre that they would return if (1) Mathre endorsed the goal of moving POT into a professional, compliant organization with infrastructure and procedures, rather than the flat decision-making exemplified in the summer, and (2) Mathre became more involved in fundraising efforts. (*Id.* ¶ 25.) On behalf of POT, Mathre

---

[1] Page numbers preceded by asterisks reference the page numbers listed in the ECF header.

executed two three-month employment contracts with Plaintiffs. (*Id.* ¶¶ 26–30.) Plaintiffs were given new titles reflecting increased authority and positions alongside Mathre on the Executive Committee. (*Id.*) Silber was hired as POT's Chief Operating Officer at $20.00 per hour, and Lang was hired as POT's Chief of Staff and Manager of Special Projects at $20.00 per hour. (*Id.* ¶¶ 26, 29.) The Board unanimously approved the contracts. (*Id.* ¶¶ 27, 29.)

Upon the expiration of the contracts, Mathre represented to Plaintiffs that Plaintiffs would receive compensation if they continued to work. (*Id.* ¶ 34.) Thereafter, Plaintiffs' responsibilities quickly expanded beyond those anticipated under the contracts. (*Id.* ¶ 35.) To properly maintain POT's financials, Silber hired an accountant near her home office in New Jersey. (*Id.* ¶ 36.) Plaintiffs organized the 2016 conference in Baltimore, Maryland; the 2017 conference in Berkeley, California; and the 2018 conference in Jersey City, New Jersey. (*Id.* ¶¶ 40, 49, 55, 60.)

Following the 2018 conference, Plaintiffs expressed their continued concerns about POT's lack of compliance with its bylaws and federal laws, Mathre's unilateral decision-making, and the lack of Board membership. (*Id.* ¶¶ 67–78.) On March 13, 2019, Plaintiffs met with Mathre in Tallahassee, Florida, to discuss the reorganization of POT. (*Id.* ¶¶ 83–84.) Together, the parties drafted and signed a memorandum of understanding, acknowledging that POT was non-compliant with federal laws and setting forth measures POT would take to become compliant. (*Id.* ¶¶ 85–89.)

POT's 2019 conference was held in Tampa, Florida. (*Id.* ¶ 91.) A Board meeting with Plaintiffs, Dreher, Sulak, Mathre, and POT's attorney, Mara Felsen, was scheduled for after the conference. (*Id.* ¶¶ 91–96.) A day before the Board meeting, however, Mathre cancelled the meeting, even though a proper Board meeting had not been held for four years. (*Id.* ¶ 96.) Plaintiffs, nonetheless, held an informal meeting in place of the cancelled Board meeting, during which they

laid out the details of Mathre's malfeasance. (*Id.* ¶ 97.) Thereafter, Mathre terminated Plaintiffs on May 7, 2019. (*Id.* ¶ 102.)

From 2015 to 2019, Plaintiffs continually relied upon Mathre's representation that Plaintiffs would be compensated for their work. (*Id.* ¶¶ 38–39.) Plaintiffs completed thousands of hours of work, (*id.* ¶¶ 42, 44, 50, 52, 62, 64, 92, 94), but were not paid for many hours of that work, (*id.* ¶¶ 43, 45, 51, 53, 63, 65, 93, 95). At all relevant times, Lang maintained a home office and storage space in New Jersey, (*id.* ¶ 13), and Silber maintained a home office in New Jersey, (*id.* ¶ 14). Plaintiffs allege that they performed all their duties, stored all POT material in their possession, and managed POT exclusively in their home office in New Jersey. (*Id.* ¶ 119.) POT did not maintain any commercial office space during Plaintiffs' employment. (*Id.* ¶ 122.) Plaintiffs also allege that Mathre has since moved from Virginia to Florida. (*Id.* ¶ 123.)

On December 19, 2019, Plaintiffs filed suit in the Superior Court of New Jersey, alleging the following claims against Defendants: (1) violation of the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. §§ 34:19-1 *et seq.* ("NJCEPA"), (*id.* ¶¶ 125–30); (2) breach of contract, (*id.* ¶¶ 131–35); (3) promissory estoppel, (*id.* ¶¶ 136–41); (4) unjust enrichment, (*id.* ¶¶ 142–46); (5) violations of the New Jersey Wage Payment Law, N.J. Stat. Ann. §§ 34:11-4.1 *et seq.* ("NJWPL") and of the New Jersey Wage and Hour Law, N.J. Stat. Ann. §§ 34:11-56.1 *et seq.* ("NJWHL"), (*id.* ¶¶ 147–50); and (6) violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), (*id.* ¶¶ 151–56). On January 17, 2020, Defendants removed the action to this Court. (Notice of Removal, ECF No. 1.) On February 21, 2020, Defendants moved to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim or, in the alternative, to transfer venue to the Western District of Virginia. (*See generally* Defs.' Moving Br., ECF No. 12-1.)

4

## II. LEGAL STANDARD

### A. Personal Jurisdiction

For the purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that [personal] jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation marks and citation omitted). When the district court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller*, 384 F.3d at 96 (internal citations omitted). "Thus, parties who have constitutionally sufficient minimum contacts with New Jersey are subject to suit there." *Id.* (internal quotation marks omitted).

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is "at home" . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (citing *Daimler*, 571 U.S. at 137; *Goodyear*, 564 U.S. at 924). "[I]n

an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19. "[T]he inquiry [in *Daimler*] 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Id.* (third alteration in original).

Specific jurisdiction exists where: (1) the defendant "purposefully directed its activities at the forum"; (2) the litigation "arise[s] out of or relate[s] to at least one of those activities"; and (3) the exercise of jurisdiction "comports with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotation marks and citations omitted). "The defendant need not be physically located in the state while committing the alleged acts." *Al-Ghena Int'l Corp. v. Radwhan*, 957 F. Supp. 2d 511, 528 (2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum." *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

## B. Transfer

A case "may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The test for determining proper venue under § 1391 is not the defendants' contacts with the district, but the locations of those events or omissions giving rise to the claim. *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Moreover, "events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *DaimlerChrysler Corp. v. Askinazi*, No. 99-5581, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000) (citations and internal quotation marks omitted). The events must have been substantial under § 1391 for venue to be proper. *Pa. Gear Corp. v. Fulton*, No. 98-1538, 1999 WL 80260, at *2 (E.D. Pa. Jan. 26, 1999). To determine

if the act which gave rise to the claim is substantial, "it is necessary to look at the nature of the dispute." *Cottman Transmission Sys.*, 36 F.3d at 295. "In cases with multiple clai[m]s, venue must be proper as to each claim." *Eddie Kane Steel Prod., Inc. v. Alabama Plate Cutting Co.*, No. 18-15167, 2019 WL 3281623, at *3 (D.N.J. July 19, 2019).

A federal district court may transfer a civil action to a different venue under 28 U.S.C. § 1404(a) ("Section 1404") or 28 U.S.C. § 1406(a) ("Section 1406"). The Third Circuit has explained that "Section 1404[] provides for the transfer of a case where both the original and the requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara v. State Farm Ins.*, Co., 55 F.3d 873, 878 (3d Cir. 1995).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." § 1404(a). Transfer is appropriate under § 1404(a) if the defendants satisfy two factors: (1) that venue is proper in the transferee district, and (2) that the transferee district can exercise personal jurisdiction over defendants. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).

If venue in the requested district is proper, then the Court must analyze a series of private and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879. Private interests include the plaintiffs' choice of venue, defendants' preference, where the claim arose, convenience of the witnesses, and the extent to which records or other documentary evidence would be available for production. *Id.* at 879. Public interests include the enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in

deciding the controversy; relative importance of public policies; and familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80. The district court "is vested with a large discretion" to determine when transfer should be ordered "for the convenience of parties and witnesses, in the interest of justice." *Solomon v. Continental Amer. Life Ins.*, 472 F.2d 1043, 1045 (3d Cir. 1973) (internal quotations and citations omitted).

Section 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." § 1406(a).

## III.  DISCUSSION

The Court will transfer this matter to the United States District Court for the Western District of Virginia. Although the Court has personal jurisdiction over Defendants, for the convenience of the parties, in the interest of justice, the Court transfers the matter pursuant to Sections 1404 and 1406.

### A.  Personal Jurisdiction[2]

To determine whether it has specific jurisdiction over Defendants, the Court must consider whether Defendants purposefully directed their activities at New Jersey; whether the litigation arises out of, or is related to, those activities; and whether it would be unreasonable to exercise personal jurisdiction over Defendants.

Taking Plaintiffs' allegations as true and construing all factual disputes in Plaintiffs' favor, the Court finds that Plaintiffs establish that Defendants purposefully directed POT's activities at New Jersey by contracting with Plaintiffs, New Jersey residents, knowing that Plaintiffs would

---

[2] Because the Court finds that it has specific jurisdiction over Defendants, the Court does not determine whether general jurisdiction exists.

8

perform their duties under those contracts in New Jersey. (*See* Compl. ¶¶ 25, 27, 29.) *See, e.g.*, *Cornish v. Morris Commc'ns Co., LLC*, No. 08-6395, 2009 WL 2169046, at *5 (D.N.J. July 16, 2009) (finding the defendant directed its actions towards New Jersey by obtaining information and consulting services from a New Jersey citizen). After those initial contracts expired, Mathre continually represented that Plaintiffs would receive compensation for their services. (Compl. ¶¶ 38–39.) Moreover, Plaintiffs' claims arise out of the parties' relationship resulting from these contracts. (*See id.* ¶¶ 125–56.) That is, "the causal connection" between Defendants' activities directed at New Jersey and Plaintiffs' claims are "intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *O'Connor*, 496 F.3d at 323.

On reply, Defendants do not argue that it would be unreasonable for the Court to exercise jurisdiction over them. (*See generally* Defs.' Reply Br., ECF No. 19.) Defendants, therefore, fail to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. The Court, accordingly, finds that it may exercise specific jurisdiction over Defendants without offending due process.

### B. Transfer

Defendants argue that venue is improper and that this matter should be transferred to the Western District of Virginia under § 1406; and, even if suit is proper in the District of New Jersey, this matter should nonetheless be transferred under § 1404. (Defs.' Moving Br. 56–63.) Plaintiffs do not provide any argument against transfer in their lengthy opposition, (*see generally* Pls.' Opp'n Br., ECF No. 16), even though Plaintiffs were granted leave to file a brief up to sixty-five pages in length (ECF No. 15).

Here, the Court finds that this action could have been brought in Western District of Virginia. A substantial part of the events giving rise to Plaintiffs' claims stem from actions taken

in Virginia—not New Jersey: Plaintiffs' NJCEPA claim is based on Defendants' decision to terminate Plaintiffs' employment for objecting to and reporting on POT's failure to comply with fundraising and federal tax law, (Compl. ¶ 126); Plaintiffs' promissory estoppel claim is based on Defendants' repeated promises that Plaintiffs would be paid a reasonable salary for continued work, (id. ¶ 138); Plaintiffs' unjust enrichment claim is based on the benefits Defendants had received from Plaintiffs' production of six conferences, (id. ¶ 144), only one of which was in New Jersey, (id. ¶ 60); Plaintiffs' NJWPL and NJWHL claims are based on Defendants' failure to pay appropriate wages, (id. ¶¶ 149–50); and Plaintiffs' FLSA claim is based on Defendants' failure to pay appropriate wages and failure to maintain proper and accurate records, (id. ¶¶ 154–56). None of these actions are alleged to have occurred in New Jersey. As to Plaintiffs' breach of contract claim, even if Plaintiffs performed their contracts in New Jersey, it is unclear where the contracts were signed or negotiated. In sum, upon review of the Complaint and Plaintiffs' submissions, including Silber's Affidavit, the Court finds that Plaintiffs' claims could have been brought in the Western District of Virginia. Moreover, Defendants concede that venue would be proper in the Western District of Virginia. (Defs.' Moving Br. 57–59.) The Court, accordingly, addresses transfer pursuant to Sections 1404 and 1406 in turn.

### 1. Transfer Under § 1404

Here, even if New Jersey is an appropriate venue for Plaintiffs' contract claim, the Court transfers the claim under § 1404. As stated above, Western District of Virginia is an appropriate transferee forum because a substantial part of the events giving rise to Plaintiffs' claims occurred within the district and the private and public factors weigh in favor of transfer.

Although Plaintiffs' forum choice—the first private factor—would normally be entitled to significant deference, *Shutte*, 431 F.2d at 25, the Court finds it appropriate to reduce the amount

of deference afforded to Plaintiffs' forum choice because, as discussed above, a substantial part of the events giving rise to Plaintiffs' claims occurred within the Western District of Virginia. The second and third factors—Defendants' preference and the location where the claims arose—weigh in favor of transfer. With respect to the convenience of the parties and witnesses, Plaintiffs do not argue that it would be inconvenient for them to litigate in Virginia. Lastly, the location of books and records—the sixth factor—is neutral. Given the prevalence of electronically stored information and technological advances, documents or records can be easily moved electronically to different venues. Overall, the Court finds the private factors weigh in favor of transfer.

The public factors also weigh in favor of transfer. First, a judgment against Defendants in Virginia will be enforceable in Virginia. As to the second public interest factor, relevant evidence is in Virginia. The third public interest factor weighs heavily in favor of transfer because the District of New Jersey is currently experiencing a judicial emergency and has six judicial vacancies, while the Western District of Virginia has one. *See* Current Judicial Vacancies, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited August 20, 2020). The fourth factor is neutral, as both states have interests over the matter. Virginia has an interest in the case involving a Virginia corporation, especially since a substantial amount of the alleged conduct that gave rise to this action occurred in Virginia. Lastly, although a judge in the District of New Jersey may be more familiar with the applicable state law, given the relative administrative difficulty resulting from court congestion in the District of New Jersey, on balance, the public interest factors weigh in favor of transfer.

### 2. Transfer Under § 1406

As stated above, because a substantial part of the events giving rise to Plaintiffs' non-contract claims occurred within the Western District of Virginia, and not New Jersey, the Court

finds that venue is improper as to those claims. It is, however, in the interest of justice to transfer this matter, rather than to dismiss it. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) ("Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by . . . 'time-consuming and justice-defeating technicalities.'" (citation omitted)).

## IV. CONCLUSION

Although the Court has jurisdiction over Defendants, for the convenience of parties and witnesses and in the interests of justice, the Court transfers this matter to the United States District Court for the Western District of Virginia. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
